UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTINE H. JONES,

    Plaintiff,

v.                                                          Case No: 2:13-cv-628-FtM-38UAM

BANK OF AMERICA,

    Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant Bank of America's Amended Motion to Dismiss (Doc. #6) filed on August 31, 2013. Plaintiff filed a Response to Defendant's Amended Motion to Dismiss (Doc. #14) on September 17, 2013. Plaintiff filed a Corrected Response to Defendant's Amended Motion to Dismiss (Doc. #30) on October 22, 2013. Defendant filed a Reply to Plaintiff's Corrected Response (Doc. #36) on November 4, 2013. Thus, the Motion is now ripe for review.

## BACKGROUND

Plaintiff Christine H. Jones initiated this action by filing a three-count Complaint (Doc. #2) in the Twentieth Judicial Circuit in and for Collier County, Florida on August 5, 2013. The case was removed by Defendant Bank of America to the Middle District of Florida on August 28, 2013. (Doc. #1). The Complaint alleges that Defendant violated

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

the Florida Civil Rights Act, Fla. Stat. §§ 760.01, et seq. ("FCRA") by discriminating against Plaintiff on the basis of age (Count I), handicap (Count II), and gender (Count III).

The Complaint alleges that Plaintiff began working for Defendant as Vice President/Branch Manager for Collier County, Florida, in Defendant's mortgage retail sales division in Naples, Florida in February 2005, and was promoted to Vice President Sales Manager for Collier and Lee Counties on August 3, 2007.

Plaintiff alleges that throughout 2008, Defendant knew that Plaintiff was diagnosed with Hashimoto's disease. Plaintiff also asserts that Defendant was aware that she was intermittently in the hospital with atrial fibrillation. In 2008, Plaintiff was diagnosed with cancer and had surgery. As a result, she was on leave between May 2008 and July 3, 2008. The Complaint alleges that on July 3, 2008, the day Plaintiff returned to work, she was interviewed by human resources in connection with complaints that she was "not demonstrating behaviors supportive of associates under her leadership." (Doc. #2, ¶ 24).

On July 16, 2008, Plaintiff was written up for being an "absentee manager" and for associate dissatisfaction by Stephen Wood, who also told Plaintiff she would receive counseling. Plaintiff disputed the counseling in writing on August 6, 2008, stating that she had been absent for medical reasons. Plaintiff never received counseling.

Thereafter, Plaintiff alleges that she received praise from Sandy Robertson, Plaintiff's direct supervisor, for her contributions and leadership on August 13, 2008, September 16, 2008, and June 25, 2009. Robertson also recommended Plaintiff for a promotion to Regional Marketing Manager in May 2009.

The Complaint alleges that Defendant was aware of some of Plaintiff's disabilities as early as 2007, when Plaintiff informed Robertson that she was pre-diabetic. Plaintiff states that after being on a conference call for two hours on July 31, 2009, she again informed Robertson and Diane Rhine that she was pre-diabetic and needed food and water. Her request was denied and although she was told that the call would not last much longer, it went on for an additional two hours. On August 11, 2009, Plaintiff was party to another conference call and was again not allowed to leave for food. Plaintiff asserts that after denying Plaintiff's request to eat on August 11, 2009, Robertson, on the advice of Rhine, fired Jones for "associate dissatisfaction."

Plaintiff alleges that younger, non-handicapped males who also held "Vice President/Sales Manager" positions were not terminated for similar "associate dissatisfaction." Specifically, the Complaint alleges that Mathew Ramsey, accused of associate dissatisfaction for discriminatory practices, such as refusing to hire Hispanics, was not fired, but demoted to loan officer and was paid $120,000 over the course of six months. Jeff Zimmerman, who was allegedly accused of sexual harassment and associate dissatisfaction, was also demoted to loan officer. When he later separated from employment, he was given a sizable severance package. Charles J. Coury, who was allegedly written up several times for hostile work environment and associate dissatisfaction, was never demoted or terminated, but actually received a promotion.

On these bases, after she was terminated, Plaintiff filed an Intake Questionnaire, complaining of sex and age discrimination, with the Equal Employment Opportunity Commission ("EEOC") on October 6, 2009. On December 7, 2009, Plaintiff filed a Charge of Discrimination with the EEOC. The EEOC deferred investigation to the

Florida Commission on Human Relations ("FCHR") on December 9, 2009. The FCHR issued a "no cause" determination on June 3, 2010 (178 days after the Charge of Discrimination was filed).

On August 5, 2013, Plaintiff brought the instant Complaint against Defendant in state court and the action was removed to this Court on August 28, 2013. Plaintiff brings Count I for age discrimination, alleging that Defendant violated Fla. Stat. § 760.10(1). Plaintiff alleges that she was employed by Defendant as a Vice President/Sales Manager, a position for which she was qualified, and that she was terminated on August 11, 2009, even though other younger vice presidents were treated more favorably. Plaintiff alleges that her age was a substantial motivating cause of her termination. According to the Complaint, Defendant's conduct has caused Plaintiff damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff brings Count II for handicap discrimination under Fla. Stat. § 760.10(1). Plaintiff asserts that due to diagnoses of cancer, Hashimoto's disease, and pre-diabetes, she requested time off for surgery and to get food as needed. Plaintiff alleges that her conditions never affected her ability to perform work, as evidenced by the praise she received and the promotion she was recommended for. Nonetheless, Plaintiff was terminated on August 11, 2009. Plaintiff alleges that non-handicapped vice presidents were treated more favorably, and therefore, Plaintiff's handicap was a substantial motivating cause of her termination. Plaintiff asserts that as a result of her termination, she suffered damages including lost wages and benefits, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Plaintiff brings Count III for gender discrimination, alleging that Defendant violated Fla. Stat. § 760.10(1). Plaintiff asserts that she, as a female, was terminated from her position while male vice presidents were only demoted. Therefore, Plaintiff alleges that she was treated less favorably than male vice presidents, and thus gender was a substantial motivating cause of her termination. Plaintiff alleges that as a result of Defendant's gender discrimination, she has suffered damages including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

Defendant moves to dismiss Plaintiff's Complaint, brought under the FCRA, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, alleging Plaintiff did not exhaust her administrative remedies.

## DISCUSSION

As a jurisdictional prerequisite to filing an FCRA action, a plaintiff must exhaust her administrative remedies by filing a timely charge with the appropriate agency. Bridges v. Standard Pacific of Tampa GP, Inc., No. 8:06-cv-1937-T-23TGW, 2007 WL 177688, at *1 (M.D. Fla. Jan. 19, 2007); Fla. Stat. § 760.11. To exhaust administrative remedies under the FCRA, a plaintiff must satisfy the requirements of Fla. Stat. § 760.11. See Maggio v. Florida Dept. of Labor & Employment Sec., 899 So.2d 1074, 1079 (Fla. 2005); Woodham v. Blue Cross & Blue Shield of Florida, Inc., 829 So.2d 891, 894 (2002). First, the aggrieved person must file a complaint with the FCHR or the EEOC within 365 days of the alleged violation. Fla. Stat. § 760.11(1); Woodham, 829

So.2d at 894. The complaint must set forth "a short and plain statement of the facts describing the violation and the relief sought." Fla. Stat. § 760.11(1).

Within 180 days of the filing of the complaint, the FCHR shall determine whether there is reasonable cause to believe that discriminatory conduct has occurred. Fla. Stat. § 760.11(3). If the FCHR determines that no reasonable cause exists, the complaint will be dismissed and the aggrieved person may request an administrative hearing within 35 days of the date of the determination. Fla. Stat. § 760.11(7). If the aggrieved party does not request an administrative hearing within 35 days, the claim will be barred. Id.; Woodham, 829 So.at 894-95. However, the Supreme Court of Florida has stated "because section 760.11(7) purports to abridge an individual's right of access to the courts, that section must be narrowly construed in a manner that favors access." Woodham, 829 So.2d at 897 (citing Weinstock v. Groth, 629 So.2d 835, 838 (Fla. 1993)).

"In the event that the commission fails to conciliate or determine whether there is reasonable cause on any complaint under [Section 760.11] within 180 days of the filing of the complaint, an aggrieved person may proceed . . . as if the commission determined that there was reasonable cause." Fla. Stat. § 760.11(8). In that event, administrative remedies will be deemed exhausted and the aggrieved person may either bring a civil action against the person or entity named in the complaint in any court of competent jurisdiction, or may request an administrative hearing. Fla. Stat. § 760.11(4).

A motion to dismiss for failure to exhaust administrative remedies is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). In deciding a Rule

12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Bedasee v. Fremont Investment & Loan, 2010 WL 98996 *1 (M.D. Fla. Jan. 6, 2010) (citing Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)); Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Insurance Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Twombly, 550 U.S. at 555-56). The former rule that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004), has been retired by Twombly. James River Insurance Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950. Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Bedasee, 2010 WL 98996 at *1 (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

In ruling on a Rule 12(b)(6) motion, the court focuses principally on the complaint, but may also consider documents attached to a pleading and matters of


which a court may take judicial notice. See Fed. R. Civ. P. 10(c); Tallabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). Courts may consider an exhibit "which a plaintiff refers to . . . in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). The Court has considered the Complaint, the Motion to Dismiss, to which two exhibits were attached,[2] and Plaintiff's Corrected Response, to which four exhibits were attached.[3] All exhibits were either referenced in the Complaint or central to the claims contained therein. Thus, the Court may properly consider all of the exhibits. Fed. R. Civ. P. 10(c).

Defendant argues that all of Plaintiff's claims must be dismissed because Plaintiff failed to exhaust her administrative remedies before filing the instant action. Defendant first asserts that after Plaintiff received her "no cause" determination, she failed to file an administrative appeal before July 8, 2010 (35 days after the cause determination was issued), and as such, Plaintiff's claims are barred. Second, Defendant asserts that Plaintiff's disability discrimination claim must be dismissed because it was outside the scope of her initial charge. Plaintiff responds that 180 days ran from the filing of her Intake Questionnaire and no determination was made by the FCHR, and therefore, she could file suit. Fla. Stat. § 760.11(8).

---

[2] The FCHR's "no cause" determination, issued with respect to Plaintiff's complaint (Doc. #6, Ex. A); and Plaintiff's Charge of Discrimination (Doc. #6, Ex. B).

[3] Plaintiff's Intake Questionnaire (Doc. #30, Ex. A); Plaintiff's Charge of Discrimination (Doc. #30, Ex. B); Plaintiff's Rebuttal to Defendant's Position Statement to the FCHR (Doc. #30, Ex. C); and FCHR Investigation Specialist Dante Bonner's Investigative Memorandum (Doc. #30, Ex. D).

The FCRA has 180 days from the filing of a complaint to determine whether there is reasonable cause to believe that discriminatory conduct has occurred.  Fla. Stat. § 760.11(3).  If the FCHR determines that no reasonable cause exists, Fla. Stat. § 760.11(7) governs and the aggrieved person may request an administrative hearing within 35 days of the date of the determination of no cause.  Fla. Stat. § 760.11(7).  If the aggrieved party does not request an administrative hearing within 35 days, the claim will be barred.  Id.; Cisko v. Phoenix Med. Prod., Inc., 797 So.2d 11, 12 (Fla. Dist. Ct. App. 2001).  However, if the FCHR does not make a determination within 180 days, subsection (8) will control and the complainant may proceed as though a reasonable cause determination was issued.  Fla. Stat. § 760.11(8).

Plaintiff filed her Intake Questionnaire with the EEOC on October 6, 2009.  (Doc. #2, ¶ 9; Doc. #30-1). Plaintiff filed her Charge of Discrimination on December 2, 2009.  (Doc. #30-2).  Plaintiff filed her Charge of Discrimination with the EEOC, which she signed on December 2, 2009.  (Doc. #30-2).  On December 7, 2009, the EEOC stamped Plaintiff's Charge of Discrimination as "received."  (Doc. #2, ¶14).  The EEOC deferred investigation to the FCHR on December 9, 2009, pursuant to those agencies' worksharing agreement.  (Doc. #2, ¶15).  The FCHR issued its "no cause" determination on June 3, 2010, informing Plaintiff that she must request an administrative hearing by filing a petition for relief within 35 days of the date of the no cause determination.  (Doc. #6, Ex. A).  If the date of filing the Intake Questionnaire is used as the date of filing a complaint, the "no cause" determination was issued 233 days later and Plaintiff's claims will not be barred.  However, if the Charge of Discrimination is deemed the complaint, the "no cause" determination was issued within 178 days, and Plaintiff's claims will be

barred because she did not request an administrative hearing within 35 days. Thus, the first inquiry is whether the Intake Questionnaire or the Charge of Discrimination satisfies the requirements of a complaint.

As this is a diversity case, the Court will consider Florida substantive law in making its determination. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) (a federal court sitting in diversity must apply the substantive law of the state); Guaranty Trust Co. NY v. York, 326 U.S. 99, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945) (statutes of limitations are substantive laws for Erie doctrine purposes).

It is well established that the FCRA is modeled after the federal Title VII, and as such, Florida courts have consistently looked to both Florida state law and Title VII case law to interpret the FCRA:

> It is well settled that when Florida statutes are adopted from an act of Congress, the Florida Legislature also adopts the construction placed on that statute by the federal courts insofar as that construction is not harmonious with the spirit and policy of Florida's general legislation on the subject. In addition to tracking much of the language of Title VII, the stated purpose of the [FCRA] is also in line with its federal counterpart.

Green v. Burger King Corp., 728 So.2d 369, 370 (Fla. Dist. Ct. App. 1999) (citations omitted); see also Smith v. Naples Community Hosp., Inc., 433 F. App'x 797, 799 (11th Cir. 2011) ("Because the FCRA is patterned after Title VII, courts generally apply Title VII case law to discrimination claims brought under the FCRA."); Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004); Joshua v. City of Gainesville, 768 So.2d 432, 434 (Fla. 2000).

The Eleventh Circuit has repeatedly evaluated the sufficiency of an EEOC intake questionnaire in relation to whether a charge has been timely filed. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1321 (11th Cir. 2001); Bost v. Fed. Express Corp., 372

F.3d 1233, 1238 (11th Cir. 2004). In <u>Wilkerson</u>, the court held that an intake questionnaire could be considered a charge if it: (1) was verified; (2) contained the basic information required by a charge under 29 C.F.R. § 1601.12[4]; and (3) the form's language could reasonably have been interpreted to represent a charge. 270 F.3d at 1320-21. However, "as a general matter an intake questionnaire is not intended to function as a charge," <u>Pijnenburg v. West Georgia Health Sys., Inc.</u>, 255 F.3d 1304, 1305 (11th Cir. 2001), and as such, the court "will not treat intake questionnaires willy-nilly as charges." <u>Wilkerson</u>, 270 F.3d at 1320. The Eleventh Circuit has specifically held that an intake questionnaire will not be deemed a charge where "the plaintiff clearly understood the intake questionnaire was not a charge because he later filed a timely charge; the EEOC did not initiate its investigation until after the plaintiff filed his charge;

---

[4] The text of 29 C.F.R. § 1601.12 states:
    (a) Each charge should contain the following:
        (1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;
        (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
        (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);
        (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
        (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.
(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred.

and the questionnaire form itself did not suggest it was a charge." Francois v. Miami Dade County, 432 F. App'x 819, 822 (11th Cir. 2011).

Recently, in Francois v. Miami Dade County, the Eleventh Circuit addressed whether an EEOC intake questionnaire could be considered a complaint or charge specifically for exhaustion purposes under both the FCRA and Title VII. There, the court found that Francois' intake questionnaire did not function as a charge because it was not verified and the form language did not indicate that it would be considered a charge when the plaintiff also filed a timely charge of discrimination form. Id. The court also found that because Francois had filed a charge of discrimination, he did not intend the intake questionnaire to function as a charge. Id.

Here, Plaintiff filed her Intake Questionnaire on October 6, 2009. The Intake Questionnaire contained Plaintiff's full name, address, and telephone number; Defendant's name and address; a clear and concise statement of the facts including a one-page attachment containing additional facts; the approximate number of Defendant's employees; and a statement disclosing that no proceedings involving the alleged unlawful employment practice had been commenced before a State or local agency. See Doc. #30 Ex. A; 29 C.F.R. § 1601.12(a). The Intake Questionnaire also contained a statement that:

> The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.

(Doc. #30, Ex. A, p. 6). However, the first page of the Intake Questionnaire states that "a charge of employment discrimination *must* be filed within the time limits imposed by law . . . ." (Id. at 1) (emphasis added).

12

Plaintiff's EEOC Intake Questionnaire here is similar to the intake questionnaire in Wilson v. Sprint/United Management Co., No. 6:10-cv-1663-Orl-22GJK, 2011 WL 2670184 (M.D. Fla. July 8, 2011).  There, the court held that Wilson's unverified intake questionnaire did not constitute a charge because even though the intake questionnaire could be confused with an EEOC charge, it was not signed under oath or affirmation. Id. at *4-6.  The court stated that "[t]he lack of verification on Wilson's intake questionnaire is fatal." Id. at *6; see also Pijnenburg, 255 F.3d at 1307 (a charge must be verified).  Similarly, in the instant case, the Intake Questionnaire was not signed by Plaintiff under penalty of perjury.  Furthermore, Plaintiff later actually filed a timely EEOC Charge of Discrimination within 365 days of her termination, indicating that even if the unverified Intake Questionnaire could reasonably have been construed as an EEOC charge, Plaintiff did not intend her Intake Questionnaire to function as a charge. See Francois, 432 F. App'x at 822.  Accordingly, Plaintiff's Intake Questionnaire cannot be considered the charge for exhaustion purposes.

Plaintiff's FCHR Charge of Discrimination, however, is considered a complaint.  It meets the requirements of a charge under 29 C.F.R. § 1601.12:  the Charge of Discrimination contains Plaintiff's full name, address, and telephone number; the full name and address of Defendant; a clear and concise statement of the facts, including pertinent dates, that constitute the alleged discriminatory conduct; and the approximate number of Defendant's employees.  (See Doc. #6, Ex. B).  Although the Charge of Discrimination does not contain a statement disclosing whether proceedings involving the alleged unlawful conduct had been commenced before a State or local agency, 29 C.F.R. § 1601.12(b) states that "a charge is sufficient when the Commission receives

from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." The Charge of Discrimination sufficiently alleges the identity of the parties as Plaintiff, Christine H. Jones, and Defendant, Bank of America Corporation. It also details facts concerning her employment, her medical leave, the reason given for termination, and allegations that she was actually terminated for discriminatory reasons, including age and sex. (Doc. #2, Ex. B). Finally, Plaintiff signed this document under penalty of perjury. (Id.). Thus, Plaintiff's Charge of Discrimination meets the requirements of 29 C.F.R. § 1601.12 and satisfies the Eleventh Circuit's Francois analysis for an FCRA complaint, and therefore is considered the complaint for purposes of determining whether Plaintiff exhausted her administrative remedies.

The Court now turns to whether Plaintiff actually exhausted her administrative remedies before filing the Complaint that initiated this action. Plaintiff's Charge of Discrimination was received by the EEOC on December 7, 2009. (Id.). Therefore, the FCHR had 180 days from December 7, 2009, in which to issue its determination. Fla. Stat. § 760.11(3). The FCHR issued its "no cause" determination on June 3, 2010—178 days after Plaintiff's Charge of Discrimination was received. Because the FCHR's "no cause" determination was issued within 180 days of the date of filing of the charge, the determination was timely issued.[5] Therefore, Plaintiff had 35 days from June 3, 2010, the date of determination of "no cause," in which to request an administrative hearing. Fla. Stat. § 760.11(7). Plaintiff never made such a request. As such, her claims are barred pursuant to Fla. Stat. § 760.11(7), and Counts I and III of Plaintiff's Complaint

---

[5] Even if the Court calculated the "filed" date as the date it was stamped received by the EEOC – December 9, 2009, the FCHR still issued its "no cause" determination within 180 days.

are due to be dismissed for failure to exhaust the administrative prerequisites to filing.[6] See, e.g., Woodham, 829 So.2d 894-95.

The Court will next consider the issue of whether Plaintiff's ADA claim (Count II) is within the scope of her Charge. Before filing an ADA complaint, a plaintiff must exhaust administrative remedies provided by the ADA. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). The administrative remedies of Title VII are incorporated by reference into the ADA. See 42 U.S.C. Sec. 12117. "As a prerequisite to filing both a Title VII and a FCRA action, a plaintiff must exhaust all administrative remedies by filing a timely charge with the appropriate agency. The scope of a plaintiff's judicial complaint under Title VII and the FCRA is limited by the scope of any administrative investigation that may reasonably arise from the plaintiff's initial charge of discrimination." Bridges v. Standard Pacific of Tampa GP, Inc., 2007 WL 177688, at *1 (M.D. Fla. Jan. 19, 2007) (citing Gregory v. Georgia Dept. Of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004); Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). The claims that the plaintiff may pursue are limited by the presumed scope of the investigation "which can reasonably be expected to grow out of" her administrative charge. Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000). A plaintiff's complaint is permitted to "amplify, clarify, or more clearly focus" the allegations made by the plaintiff in an earlier administrative charge. Gregory, 355 F.3d at 1279-80.

In this case, Plaintiff explicitly alleges disability discrimination for the first time in the Complaint filed in the instant lawsuit. In her EEOC Charge, Plaintiff alleged that her

---

[6] "If the aggrieved person does not request an administrative hearing within the 35 days, the claim will be barred."

15

employment was terminated because of her age and gender in violation of Title VII and the Age Discrimination in Employment Act and that she was treated differently than younger males. (Doc. #30-2). In her Charge, she did not check the disability box, nor did she allege that she was discriminated against on the basis of her disability. She stated: "I believe that I was discriminated against because of my Sex, Female, and my Age, 57, in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act of 1967." (Doc. #30-2). Thus, Defendant argues that Plaintiff's ADA claim falls outside the scope of her Charge and the FCHR's investigation.

The Court notes that in this case that Plaintiff bypassed opportunities to indicate disability discrimination. In the personal intake Questionnaire (Doc. #30-1) she fails to acknowledge that she has a disability. Id. In the personal information section on the first page, beside the "Date of Birth" and "Sex" questions, the form asks "Do You Have a Disability?" Id. at 1. Neither "yes" nor "no" was checked. Id. Item 4 on the second page asks Plaintiff to indicate the basis for her discrimination claim. Id. at 2. While she checked the boxes for "sex" and "age," she did not check the "disability" box. Id. On the third page, Items 8-10 ask several detailed questions about the nature of any alleged disability, how it affects the submitting party's work activities, and whether the submitting party requested accommodations. Id. at 3. Plaintiff did not answer any of these questions. Id. Lastly, on the one-page attachment to the Questionnaire, Plaintiff makes detailed allegations about younger male comparators but fails to address their disability status. Id. at 6.

The Court notes that Plaintiff's charge is similarly lacking allegations that she had a disability, or that hat she was discriminated against because of one. (Doc. #30-2).

The "disability" box is not checked, and none of the allegations, including those regarding comparators, mentions disability. Id. Further, directly below a brief reference to medical leave in each document, Plaintiff expressly claims she was discriminated against because of her age and sex but entirely fails to mention disability or the ADA. Further, the FCHR's Investigative Memorandum states that the "focus of the complaint" is: "Complainant alleges she was subjected to different terms and conditions and terminated because of her age (57) and sex (female)." (Doc. #30-4).

Thus, based upon this Court's review of the documents and the briefs of the Parties, the Court finds that Plaintiff failed to include a disability discrimination claim in her Charge, and thus did not exhaust her administrative prerequisites of the FCRA with respect to this claim. A disability discrimination claim could not reasonably be expected to grow out of the Charge of Discrimination. Thus, Defendant's Motion to Dismiss the ADA claim (Count II) is granted.

Accordingly, it is now

**ORDERED:**

(1) Defendant Bank of America's Amended Motion to Dismiss (Doc. #6) is **GRANTED**. The case is **DISMISSED with prejudice**.

(2) The Clerk of Court shall enter judgment accordingly, terminate any previously scheduled deadlines and pending motions, and **CLOSE this case**.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of November, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record